```
 1 │ ADAM L. BRAVERMAN
   │ United States Attorney
 2 │ BRUCE C. SMITH
   │ Assistant U.S. Attorney
 3 │ California State Bar No. 078225
   │ Federal Office Building
 4 │ 880 Front Street, Room 6293
   │ San Diego, California 92101-8893
 5 │ Telephone: (619) 546-8266
   │ E-mail: bruce.smith@usdoj.gov
 6 │
   │ Attorneys for Plaintiff
 7 │ United States of America
```

                    UNITED STATES DISTRICT COURT

                   SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. **'18CV0637 JLS BGS** |
|---|---|
| Plaintiff, | COMPLAINT FOR FORFEITURE |
| v. | |
| $15,600.00 IN U.S. CURRENCY, | |
| Defendant. | |

By way of complaint against the defendant $15,600.00 IN U.S. CURRENCY ("$15,600 in currency"), plaintiff UNITED STATES OF AMERICA alleges:

1.  This Court has jurisdiction over this action by virtue of the provisions of Title 28, United States Code, Section 1355(a) and Title 21, United States Code, Section 881(a)(6), because the defendant $15,600 in currency constitutes money furnished or intended to be furnished in exchange for a controlled substance, or proceeds traceable to an exchange for controlled substances in violation of Chapter 13 of Title 21, United States Code.

2.  Venue is proper in this district pursuant to //

Title 28, United States Code, Section 1395 because the defendant $15,600 in currency was found in this district.

3. On October 19, 2017, in the Southern District of California, at the San Diego International Airport ("SDIA"), members of the San Diego Integrated Narcotics Task Force ("NTF") Commercial Interdiction Unit were on duty, seeking to intercept and seize controlled substances and proceeds from the sales of controlled substances passing though the airport.

   A. The Task Force officers ("TFO") were trained and experienced, and knew persons engaged in the commercial interstate distribution of controlled substances frequently used SDIA and the aircraft that arrived and departed there to distribute controlled substances throughout the United States.

   B. The trained and experienced Task Force officers knew persons engaged in the commercial interstate distribution of controlled substances frequently used SDIA and the aircraft that arrived and departed there to transport drug sales proceeds and funds to be used to purchase drugs in and out of San Diego. Those proceeds and funds were usually in the form of United States currency.

   C. The trained and experienced Task Force officers knew persons engaged in the commercial interstate distribution of controlled substances frequently used couriers to transport controlled substances, drug sales proceeds, and funds used to purchase drugs in and out of San Diego. SDIA and the aircraft that arrived and departed

there were relied upon as a means of sending and receiving such couriers.

4. On or about October 19, 2017, NTF Task Force officers and Drug Enforcement Administration ("DEA") agents assigned to SDIA learned that JANETT MALDONADO ("MALDONADO") was traveling from Charlotte Douglas International Airport ("CLT") in Charlotte, North Carolina to SDIA aboard American Airlines flight 487.

A. MALDONADO was traveling on a one-way ticket, purchased less than 24 hours prior to her flight.

B. MALDONADO, a United States citizen and resident of Santa Ana, in the Central District of California, did not purchase a round trip ticket for her travel from California to North Carolina and back.

C. MALDONADO was traveling with no checked luggage.

D. The TFOs and DEA agents had specialized training and were experienced in investigating illegal drug and drug currency couriers. They knew the purchase of a cross-country, one-way airline flight ticket a day or two before departure is unusual, and can be indicative the traveler is an illegal drug or drug currency courier.

E. The TFOs and DEA agents knew the general traveling public purchases round trip airline tickets weeks or even months in advance of the scheduled departure date. Advance purchase of round trip airline tickets results in lower fares for the traveler. Purchasing a one-way airline ticket even a week in advance of departure all but guarantees one will pay the highest fare.

F. The TFOs and DEA agents had specialized training and were experienced in investigating illegal drug and drug currency couriers. They knew illegal drug and drug currency couriers oftentimes do not know when drugs or currency will be available for transport until the last minute. The nature of illegal drug trafficking, and its uncertainties, often compel couriers and their employers to purchase airline tickets close to the departure date.

G. The trained and experienced TFOs and DEA agents knew San Diego was a primary source region for controlled substances cultivated and manufactured on the west coast of the United States ("west coast"), Latin America, and elsewhere.

H. The trained and experienced TFOs and DEA agents knew controlled substances cultivated and manufactured on the west coast, in Latin America, and elsewhere were sent and distributed for resale from source regions such as San Diego to all points north and east within the United States. In their experience, the Charlotte, North Carolina region was a known destination market for controlled substances.

5. On October 19, 2017, just before 9:35 a.m. in SDIA Terminal Two, the TFOs and DEA agents prepared for the arrival of American Airlines flight 487 and passenger MALDONADO.

A. At approximately 9:35 a.m., shortly after American Airlines flight 487 landed, the TFOs and DEA agents, armed with a physical description and photo of MALDONADO, identified her as she exited the jet way from Gate 29.

//

   B. The agents noted MALDONADO was carrying a purse and a pink hard-shelled roller carry-on bag.

 6. As MALDONADO walked away from the gate, TFO Santana walked up to MALDONADO, identified himself as law enforcement officer, and showed MALDONADO his law enforcement credentials.

   A. TFO Santana assured MALDONADO she was not in trouble, and asked if he could speak with MALDONADO about her journey.

   B. MALDONADO was cooperative and stopped to speak with TFO Santana.

   C. MALDONADO told TFO Santana she just returned to California from Charlotte, North Carolina, where she visited unspecified family members.

   D. MALDONADO told TFO Santana she flew from Ontario, California to Charlotte, North Carolina, stayed there only one day, and flew back to California.

   E. TFO Santana asked MALDONADO whether she was carrying a large amount of money.

   F. MALDONADO told TFO Santana she had approximately $8,000.00 in cash.

   G. MALDONADO told TFO Santana one-half of the $8,000.00 belonged to her, and the other half belonged to an unnamed friend.

   H. MALDONADO told TFO Santana the unnamed friend asked MALDONADO to bring the friend's portion of the $8,000.00 to San Diego, and deliver it to a person there.

//

      I.   MALDONADO told TFO Santana she did not know the name of the person in San Diego to whom she was to deliver her unnamed friend's portion of the $8,000.00.

      J.   MALDONADO amended her story, and told TFO Santana she did not visit family members in Charlotte, North Carolina. Rather, she visited a friend.

  7.   MALDONADO accepted TFO Santana's invitation to continue her interview away from the crowds of SDIA passengers, in the privacy of the nearby SDIA NTF office.

      A.   MALDONADO agreed she would feel more comfortable in a private area.

      B.   MALDONADO walked with TFO Santana to the SDIA NTF office.

  8.   Upon arriving at the SDIA NTF office, MALDONADO gave TFO Santana permission to search the interior spaces and contents of her purse and carry-on bag.

  9.   In the SDIA NTF office, MALDONADO gave TFO Santana permission to examine the stored messages and information in the cellular telephone she was carrying.

  10.  In the SDIA NTF office, MALDONADO identified "Carolina Hernandez" as the person in Charlotte, North Carolina who gave MALDONADO money to deliver in San Diego.

      A.   MALDONADO did not know the address where Carolina Hernandez lived, only that it was in Charlotte, North Carolina.

  11.  In the SDIA NTF office, TFO Santana was assisted by DEA Special Agent Sharpe.

      A. Acting on MALDONADO'S expression of consent, Agent Sharpe examined the interior spaces and contents of MALDONADO'S carry-on roller bag.

      B. Inside MALDONADO'S carry-on roller bag, Agent Sharpe discovered a large amount of U.S. currency.

      C. When TFO Santana mentioned to MALDONADO that Agent Sharpe encountered a rather large amount of currency in MALDONADO'S carry-on roller bag, MALDONADO volunteered she was carrying about $16,000.00 in cash.

      D. MALDONADO told TFO Santana $6,000.00 of the currency she was carrying belonged to MALDONADO, and the remainder belonged to Carolina Hernandez, MALDONADO'S friend in Charlotte, North Carolina.

      E. Later, MALDONADO told TFO Santana none of the currency in her luggage belonged to her.

      F. MALDONADO said he did not want anything to do with the currency discovered in her luggage.

  12. On October 19, 2017, in the SDIA NTF office, MALDONADO completed and signed a single-page, pre-printed form entitled "Disclaimer Of Ownership Of Currency" ("Disclaimer").

      A. By signing the Disclaimer, MALDONADO affirmatively stated she was "not the owner of the currency and have no claim for its return to me."

  13. The currency discovered in MALDONADO'S carry-on bag consisted of 127 $100.00 bills, 16 $50.00 bills, and 110 $20.00 bills.

//

7

1       A.   One of the $100.00 bills was determined to be
2 counterfeit, and was removed from the seized currency.
3       B.   The currency discovered in MALDONADO'S carry-on
4 bag was combined and counted.
5       C.   The grand total of the currency discovered in
6 MALDONADO'S carry-on bag was $15,600.00
7       D.   The $15,600.00 discovered in MALDONADO'S carry-
8 on bag is the defendant $15,600 in currency.

9   14. On October 19, 2017, at the SDIA NTF office,
10 San Diego Police Department ("SDPD") Officer Queen and his
11 trained and certified narcotic detection dog, "King",
12 conducted an examination of the defendant $15,600
13 in currency.
14       A.   SDPD Officer Queen and King were trained and
15 certified as a dog handler and narcotic detection dog team.
16       B.   King was specially trained to display a behavior
17 or "alert" when he encountered the scents of a variety of
18 controlled substances.
19       C.   Officer Queen was trained and experienced in
20 recognizing King's trained behaviors or alerts.
21       D.   King alerted to the presence of the scent of one
22 or more controlled substances emanating from the defendant
23 $15,600 in currency.
24       E.   Officer Queen told the TFOs of King's alert and
25 explained its significance.
26   15. The defendant $15,600 in currency was seized for
27 forfeiture by the DEA as currency constituting proceeds of
28 the purchase(s) of controlled substances, and money possessed

with the intent to be furnished in exchange for controlled substances.

16. The defendant $15,600 in currency constitutes money furnished or intended to be furnished in exchange for a controlled substance, in violation of Chapter 13, Title 21, United States Code.

17. Alternatively, the defendant $15,600 in currency constitutes proceeds of, or proceeds traceable to, an exchange for a controlled substance, in violation of Chapter 13, Title 21, United States Code.

18. Alternatively, the defendant $15,600 in currency was used or intended to be used to facilitate an exchange for a controlled substance, in violation of Chapter 13, Title 21, United States Code.

19. As a result of the foregoing, the defendant $15,600 in currency is liable to condemnation and to forfeiture to the United States for its use in accordance with Title 21, United States Code, §881(a)(6).

20. The defendant $15,600 in currency is presently deposited within the jurisdiction of this Court.

//
//
//

WHEREFORE, the United States prays that due process issue to enforce the forfeiture of the defendant $15,600 in currency, and that due notice be given to all interested parties to appear and show cause why said forfeiture should not be declared.

DATED: March 29, 2018

ADAM L. BRAVERMAN
United States Attorney

s/ Bruce C. Smith
BRUCE C. SMITH
Assistant U.S. Attorney

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
United States of America

### DEFENDANTS
$15,600.00 in U.S. Currency

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
AUSA Bruce C. Smith, Phone: (619) 546-8266
USAO, 880 Front Street, Room 6293, San Diego, CA 92101-8893

Attorneys (If Known)
'18CV0637 JLS BGS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [X] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☒ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other |  | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / **Habeas Corpus:** |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 530 General |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application |  | ☐ 950 Constitutionality of State Statutes |
|  | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee |  |  |
|  | ☐ 440 Other Civil Rights / ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions |  |  |

## V. ORIGIN (Place an "X" in One Box Only)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
21 U.S.C. Section 881
Brief description of cause:
Narcotics trafficking

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE: 03/29/2018
SIGNATURE OF ATTORNEY OF RECORD: s/ Bruce C. Smith

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## VERIFICATION

I, Alberto Santana, state and declare as follows:

1. I am a Task Force Officer, assigned to a San Diego Integrated Narcotics Task Force, Team 8, and am one of the task force officers assigned to this investigation.

2. I have read the foregoing complaint and know its contents.

3. The facts set forth in the complaint are based upon my own knowledge or were facts furnished to me by other United States federal, state, or local law enforcement personnel, civilian witnesses, or other official Government sources.

Based on this information, I believe the allegations in the complaint to be true.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.

Executed on March 28, 2018.

_____
ALBERTO SANTANA, TFO
NTF TEAM 8